UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARISSA ANN GUINTA,

    Plaintiff,

   v.            Case No. 19-C-1350

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

**DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

  Plaintiff Carissa Guinta filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires reversal for a number of reasons. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## BACKGROUND

  On May 30, 2012, Plaintiff completed an application for a period of disability and disability insurance benefits, alleging an onset date of August 1, 2011, when she was 34 years old. She listed fibromyalgia and post-traumatic stress disorder with depression as the conditions that limited her ability to work. R. 200. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. ALJ Brent C. Bedwell conducted a hearing on December 17, 2014. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified at the hearing. R. 34–77.

Plaintiff testified that she had a high school education and a year of college education. R. 40. At the time of the hearing, Plaintiff lived with her husband and their four children, ages 10, 13, 13, and 15. *Id.* Plaintiff and her husband shared placement of their children with their former spouses, and Plaintiff's eldest child, who was seventeen years old, lived in a treatment foster home. *Id.* Plaintiff is a veteran and receives approximately $3,450 per month based on the Veterans Administration's assessment of her as disabled and unable to work. From 1999 to 2003, Plaintiff was an administrative specialist for the Army, serving as a secretary, first to a First Sergeant, then a Captain, and later a Lieutenant Colonel. R. 42. She took time off after she left the military, then from 2005 to 2010, she worked in property management where she handled Section 8 housing allowance applications, evictions, renters' insurance issues, and police, fire, or other emergencies for as many as 280 apartment units. R. 43–44. From 2009 to 2011, Plaintiff worked as a disability caregiver primarily in elder abuse and neglect cases. R. 44.

Plaintiff testified that since August 2011 her fibromyalgia and major depression prevented her from being able to work. R. 46. She explained that she has post-traumatic stress disorder (PTSD) from being raped by her military recruiter and the murder of her oldest child by a previous spouse, and experiences anxiety and paranoia. Plaintiff testified that she attends therapy. R. 50. She stated that she has difficulty sitting down after about a half an hour and that she can stand for about 15 minutes or so. R. 51. She testified that she has "bad pain" days about once a week, which cause headaches and stomach aches. R. 60. On those days, she just naps and lies down. R. 61. Plaintiff testified that her husband primarily does the driving. R. 41. In a written decision dated February 27, 2015, the ALJ concluded Plaintiff was not disabled. R. 18–29. Plaintiff sought judicial review of the Commissioner's decision, and the matter was ultimately reversed and remanded for further proceedings on stipulation of the parties.

2

ALJ Bedwell held a second administrative hearing on January 31, 2018. R. 989–1035. Plaintiff, who was represented by counsel, and a VE testified. At the time of the hearing, Plaintiff was 41 years old. R. 996. Plaintiff discussed attending therapy and taking online courses. She testified that she took online classes because in an in-person class she previously took she encountered a teacher who was a bully, which caused her to cry in class and led to excessive absences. R. 1011. Plaintiff stated she was part of a Shakespeare troupe with veterans and that she played the role of Desdemona in the troupe's production of *Othello*. R. 1002. Plaintiff empties and loads the dishwasher. She loves to cook but is not allowed to cook unless her husband is home. R. 1004. Her husband took her to Disney World for her fortieth birthday. R. 1005. She testified that her husband pushed her around in a wheelchair and they napped every day. *Id.* She testified that her depression issues are at the point where she could not do anything with her children and that she is taking Prozac. R. 1006–07. Plaintiff stated she has panic attacks where she starts hyperventilating. R. 1016. She reported always having pain with her fibromyalgia. R. 1007. Plaintiff stated she has a service dog and took the dog to training classes so he could become certified. R. 1008.

In a seventeen-page decision dated March 12, 2018, the ALJ concluded Plaintiff was not disabled. R. 965–81. Following the Agency's sequential evaluation process, the ALJ found at step one that Plaintiff last met the insured status requirements on December 31, 2016, and did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2011, through her date last insured of December 31, 2016. R. 967. At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, depression, PTSD, and attention deficit hyperactivity disorder (ADHD). *Id.* At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 968.

After reviewing the record, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she "is limited to unskilled work and to jobs having no more than occasional interaction with the public, coworkers and supervisors, decision making and changes in work setting; and she must be allowed to change positions between sitting and standing with no more than three changes in position lasting one to two minutes each hour." R. 970. With these limitations, the ALJ found at step four that Plaintiff was unable to perform any past relevant work as an apartment manager and social services aide but concluded that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including document preparer, check weigher, and final assembler. R. 981. Based on these findings, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time from August 1, 2011, the alleged onset date, through December 31, 2016, the date last insured. *Id.* The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Thereafter, Plaintiff commenced this action for judicial review.

**LEGAL STANDARD**

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that most people under retirement age are

capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agency decisions, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof; a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in most cases that go to hearing, is not available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record)."). To repeat, "[t]he issue before this court is whether the ALJ's findings were supported by substantial evidence, not whether [the claimant] is disabled." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales

6

Case 2:19-cv-01350-WCG   Filed 03/24/21   Page 6 of 17   Document 24

offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff raises a number of challenges to the ALJ's decision. She claims that the ALJ failed to properly evaluate her subjective statements and the medical opinion evidence. Plaintiff also contends that the ALJ failed to properly determine her RFC, presented a flawed hypothetical question to the vocational expert, and did not adequately consider the disability determination she received from the Veterans Administration. Finally, she argues that the ALJ was not properly appointed under the appointments clause of Article II to the United States Constitution.

Given the deferential standard of review set forth above and the ALJ's thorough discussion of the evidence and explanation for his decision, the Commissioner urges the Court to affirm his decision. The ALJ found that Plaintiff was capable of a limited range of sedentary unskilled work in jobs having no more than occasional interaction with the public, co-workers, and supervisors, and no more than occasional decision-making and changes in the work setting. The ALJ added as a limitation that Plaintiff be allowed to change positions between sitting and standing with no more than three changes in position lasting one to two minutes each hour. R. 970. The vocational expert identified several jobs that existed in significant numbers in the national economy that a person with this RFC and Plaintiff's age, education, and work experience could perform.

The Commissioner's argument is not without some merit. "Unskilled work" is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The basic mental demands of unskilled work include the ability (on a sustained basis) to understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, coworkers, and work

7

situations; and deal with changes in a routine work setting. PROGRAM OPERATIONS MANUAL SYSTEM (POMS) DI 25020.010(A)(3). In concluding that Plaintiff was capable of performing such work on a sustained basis, despite her physical and mental impairments, the ALJ gave careful consideration to Plaintiff's treatment history, the various assessments and evaluations she had undergone, her statements and activities, and the opinions of the health care professionals who had treated and evaluated her or reviewed the record. Although Plaintiff alleged she could sit for one hour, stand for a few minutes, and walk for maybe one to two hours in a day, R. 971, her activities included attendance in college courses, participation in a theater troupe, multiple trips and vacations, planning and organizing charity events, attending a three-day training seminar to become a volunteer teacher for at-risk parents, playing volleyball with friends multiple times a week, planning her wedding, and moving into and decorating a new house. R. 974–75. Her treatment notes reflected relatively low levels of pain attributed to fibromyalgia for which she was sporadically treated with medication and physical therapy. R. 971. Her mental health treatment likewise showed noncompliance and long gaps. R. 974. At times, Plaintiff seemed to acknowledge that keeping active reduced her symptoms. R. 24 (citing R. 515) ("On March 29, 2012, the claimant reported an ongoing reduction in depressive symptoms, her relationship with her fiancee was doing well, she had been 'very busy' with wedding planning, and she had been 'too busy' to be depressed.").

Notwithstanding the ALJ's thorough discussion of the evidence, however, the Court concludes that the Commissioner's decision must be reversed based on controlling circuit precedent. Plaintiff maintains that the ALJ erred in formulating the hypothetical question he posed to the VE by failing to account for all of the non-exertional limitations that resulted from her mental impairments in the area of concentration, persistence, or pace (CPP). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The responsibility for assessing a claimant's RFC in a case that proceeds to a hearing lies with the ALJ. 20 C.F.R. § 404.1546(c). The assessment of a claimant's RFC is based on "all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). It is well established that both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

At step three of the sequential evaluation process, the ALJ found that Plaintiff has a "moderate limitation" with regard to the broad functional domain of concentration, persistence, or pace during what is called the Psychiatric Review Technique (PRT). R. 969. The Agency does not regard the limitations identified at this step in the process as an RFC assessment. R. 970 ("The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."); *see also* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Instead, the ALJ/adjudicator is instructed to conduct a more detailed assessment by itemizing various functions contained in the broad categories listed in paragraphs B and C of the adult mental disorders in 12.00 of the Listing of Impairments in order to determine the claimant's actual mental RFC. *Id.* ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

The Commissioner has argued that including the limitations found in the paragraphs B and C criteria at step two of the process into the RFC and the hypothetical question inappropriately conflates independent inquiries—the PRT, at steps two and three, and the RFC, at step four.

9

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). Various circuits of the Court of Appeals, however, including the Seventh Circuit, have rejected this argument. *Id.* (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (per curiam); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996)). The Seventh Circuit has also rejected the argument that the step two finding of moderate limitation in the broad domain of "concentration, persistence *or* pace" is not intended to apply to each of those functions since they are listed in the disjunctive. *See Varga v. Colvin*, 794 F.3d 809, 815–16 (7th Cir. 2015) (emphasis added). Instead, the court has held that a finding of moderate difficulty in CPP at step two and three applies to all three broad areas of function and must be accounted for in the RFC and corresponding hypothetical question. *Id.*

The Seventh Circuit has also repeatedly rejected the argument that limiting a claimant to "unskilled work" sufficiently accounts for moderate limitations in CPP. *See, e.g.*, *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) ("CPP limitations are familiar territory, especially in recent years. Over many cases we observed a recurring error: ALJs would limit a claimant to 'unskilled work' and conclude that by doing so they had incorporated a claimant's full range of CPP limitations—challenges concentrating, staying on task, and maintaining a given pace in the workplace. Time and again we have disagreed."); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (reversing and explaining that the observation that someone can perform simple tasks says nothing about whether she can do so over the course of a full workday); *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019) (rejecting RFC limiting claimant to "unskilled work" with no "fast-paced production line or tandem tasks" because "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace"); *Moreno v. Berryhill*, 882 F.3d 722, 726, 730 (7th Cir. 2018) (reversing because the hypothetical question limiting claimant to routine

10

work, requiring that he understand, remember, and carry out simple work instructions, exercise simple work place judgments and have no more than occasional changes in the work setting failed to accommodate moderate difficulties in CPP); *Yurt*, 758 F.3d at 858–59 ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010) (holding that hypothetical limiting claimant to routine, repetitive tasks with simple instructions failed to account for moderate limitation in CPP); *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009) (limiting hypothetical to simple, routine tasks did not account for limitations of CPP); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration, or mood swings). These cases make clear that reversal is required based on the step two-three findings alone.

Consideration of the ALJ's step four findings does not change the result. Assessment of Plaintiff's mental impairments was completed by Deborah Pape, Ph.D., Beth Jennings, Ph.D., Ronald Hermann, M.D., and Catherine Coppolillo, M.D. The ALJ provided a thorough discussion of their respective opinions and findings. In making his own RFC findings at step four, the ALJ gave the opinions of Dr. Pape significant weight, the opinions of Dr. Jennings some weight, and the opinions of Drs. Hermann and Coppolillo little weight. R. 976–77. The ALJ gave the opinion of state agency consultant Dr. Pape the greatest weight.

Dr. Pape completed a Mental Residual Functional Capacity Assessment (MRFC) form to document her assessment. R. 95–97. The MRFC form includes Section I, which is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS DI 24510.060(B) (bold in original). It lists 20 mental function items grouped under four main categories: understanding and

11

memory, sustained concentration and persistence, social interaction, and adaptation. The professional completing the form is instructed to rate the degree of limitation for each item: not significantly limited, moderately limited, markedly limited, no evidence of limitation in this category, and not ratable on available evidence. *Id.* The actual mental RFC is to be described in narrative format in Section III of the form. *Id.*

Dr. Pape noted in Section I of the form that Plaintiff was moderately limited in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 95–96. After each main category of function, Dr. Pape provided a brief explanation of the limitation she had found. At the end of the form, Dr. Pape stated that Plaintiff's "mental impairments impose moderate functional limitations. She can do simple, unskilled work." R. 97. It was in partial reliance upon Dr. Pape's opinion that the ALJ formulated Plaintiff's RFC. Missing from the RFC and the hypothetical question posed to the vocational expert, however, was any mention of the moderate limitations Dr. Pape had noted on the Section I worksheet. Plaintiff contends that this was error.

The ALJ's omission of the moderate limitations from Section I of the MRFC that Dr. Pape completed is understandable in light of the admonition in the operations manual that Section I "does not constitute the RFC assessment" and that the actual mental RFC is to be recorded in Section III in narrative format. POMS DI 24510.060(B); *see also Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) ("Because Smith cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was

12

deficient, his argument is without merit as it pertains to Dr. Tan and Dr. Graff."). It is also understandable in light of the regulations that place responsibility for assessing a claimant's RFC with the ALJ, 20 C.F.R. § 404.1546(c), not the medical sources, and provide that the assessment of a claimant's RFC is based on "all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). But under the law of this circuit, Plaintiff's argument has strong support.

In *DeCamp*, for example, Dr. Pape "(whose opinion the ALJ cited to support her finding)" likewise indicated on the MRFC form that the claimant would have moderate limitations in "maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace." 916 F.3d at 675. Despite these limitations, Dr. Pape concluded in the narrative section of the MRFC she completed that the claimant "is capable of withstanding the demands of unskilled work as defined by SSA." *DeCamp v. Berryhill*, No. 15-C-1261, 2018 WL 1378758, at *9 (E.D. Wis. Mar. 19, 2018). The Commissioner argued on appeal that the ALJ had adequately accounted for the claimant's limitations in her RFC determination and in the hypothetical question to the vocational expert by relying on part of the narrative explanations (the part of the PRT and MRFC forms where the doctors provide a written explanation of their findings, rather than the check-box sections) offered by Dr. Pape and another state agency consultant. The Court of Appeals rejected the Commissioner's argument with the following explanation:

> True, both doctors offered narrative explanations in addition to the check-boxes on the assessment forms, and an ALJ may rely on those descriptions. *See Varga*, 794 F.3d at 816. But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms. *See Yurt*, 758 F.3d at 859. In *Yurt*, a narrative explanation translated the limitations identified by doctors in the check-box sections of the

13

> forms. *See id.* at 854–55. We still reversed and remanded because the ALJ did not adequately account for the limitations identified by the doctor in the check-box section of the forms. *See id.* at 859. Here, the ALJ similarly focused her analysis on the doctors' bottom-line conclusion that DeCamp was not precluded from working without giving the vocational expert any basis to evaluate all DeCamp's impairments, including those in concentration, persistence, and pace.

*DeCamp*, 916 F.3d at 676. In fact, the Court of Appeals further suggested that the ALJ was required to include even mild limitations of paragraph B criteria. *See id.* ("The ALJ's analysis is similarly flawed with respect to DeCamp's mild limitations in understanding, remembering, and carrying out simple instructions and her moderate limitations in concentration, persistence, and pace as found by Dr. Goldstein.").

In this case, the ALJ explained why he concluded that the RFC finding Plaintiff of a limited range of unskilled work accounted for her mental impairments:

> This assessment is generally consistent with the evidence of record and the residual functional capacity assigned in this decision. The claimant's ability to perform unskilled work with sufficient attention, concentration, and pace and within customary tolerances is shown by the claimant's intact cognition, speech, comprehension, processing speed, executive function, and attention shown on examinations as well as her activities that included volunteering as a teacher for Easter Seals and performing with her Shakespeare troupe. While she exhibited deficits in memory at times, her memory was intact at other times and, unlike her counterparts, she was able to memorize her lines for her Shakespeare troupe. The claimant's ability to engage in occasional interaction with supervisors gathers support in her positive and appropriate interaction with treating providers. The claimant's ability to withstand and [sic] occasional decision-making and workplace change is established by her cooperative behavior and normal hygiene/grooming on examination, the absence of intensive mental health treatment and her good response to the care she has received when she is compliant, and her ability to engage in the range of daily activities discussed above. The undersigned does limit the claimant's interaction with the public and her coworkers given her reports of irritability and social isolation/withdrawal.

R. 976–77 (internal citations omitted). Although the ALJ explained why he did not include some of the limitations found by Dr. Pape in the RFC, he did not address them all. Having given Dr. Pape's opinion "significant weight," *DeCamp* seems to mandate that the ALJ include all of the

14

limitations found by Dr. Pape in the RFC and hypothetical question posed to the VE or explain why they were rejected. 916 F.3d at 676.

Citing the court's unpublished decision in *Urbanek v. Saul*, 796 F. App'x 910 (7th Cir. 2019), the Commissioner maintains that the Seventh Circuit has not created a categorical rule that the RFC finding of simple, routine, and repetitive tasks, occasional interactions with others, and simple work-related decisions is insufficient to account for moderate deficits in maintaining CPP. Def.'s Br. at 10, Dkt. No. 23. In *Urbanek*, the Seventh Circuit recognized that "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Id.* at 914 (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *O'Connor-Spinner*, 627 F.3d at 619; *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002)). "Although the ALJ did not explicitly mention 'moderate limitations in concentration, persistence, or pace' in her residual-functional-capacity assessment or in the hypothetical question," the court found that "she appropriately relied on Dr. Rozenfeld's testimony to formulate Urbanek's residual functional capacity . . . and included all the doctor's proposed limitations in the residual functional capacity and the hypothetical." *Id.*

To be sure, it is difficult to reconcile *Urbanek* and *Jozefyk* with the line of authority discussed above. But *Urbanek*, an unpublished and thus non-precedential decision, is distinguishable from the facts of this case as the ALJ in *Urbanek* relied on the testifying medical expert to assess the claimant's limitations in CPP. *Id.* In this case, by contrast, no expert testified at the administrative hearing. And in *Jozefyk*, the court seemed to suggest that the claimant's moderate difficulties, which his own doctors did not confirm, arose only in social settings. 923 F.3d at 497–98. In addition, unlike *DeCamp*, neither *Urbanek* nor *Jozefyk* addressed the ALJ's failure to include limitations noted only on the worksheet of the MRFC form.

15

This Court is bound by circuit precedent. Though, as noted above, the SSA's own rulings, regulations, and manuals appear to say otherwise, that precedent seems to mandate that a finding of moderate limitations in concentration, persistence, or pace at steps two and three of the sequential evaluation requires the ALJ to include corresponding limits in each functional area in formulating the RFC for steps four and five. *Martin*, 950 F.3d at 373–74. Circuit precedent also appears to mandate that the limitations noted in the itemized list of functions in the worksheet of an MRFC form on which the ALJ relies be included in the RFC and hypothetical question posed to the vocational expert unless they are "adequately accounted for" in the narrative explanation provided in the form. *DeCamp*, 916 F.3d at 676. Because the ALJ failed to comply with that precedent, remand is required.

It is the Court's hope that some clarity will eventually be brought to this area of law. While the ALJ's attempt to translate mental limitations into job-related restrictions that fit within the vocational expert's terminology is understandable, doing so inevitably risks appeal and reversal. *See Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 776–78 (E.D. Wis. 2019). Although the Seventh Circuit has said it does not insist on any specific terminology, *Crump*, 932 F.3d at 570 (noting that "the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement"), in order to avoid reversal and remand, it would seem that the ALJ should use the precise terminology used in the forms that are relied upon. This may seem inconsistent with the regulation placing responsibility for assessing a claimant's RFC with the ALJ, 20 C.F.R. § 404.1546(c), but it seems the weight of authority in this circuit places it with medical experts. If so, the ALJ's role is reduced to choosing the medical expert whose opinion is adopted. For the ALJ to try to translate moderate limitations in different mental functions into specific categories of work on his own inevitably results in challenges to the RFC and corresponding hypothetical question posed to the vocational expert.

16

The other alternative for the Commissioner is to appeal and seek clarification from the Court of Appeals. This is not an unimportant issue. The claim that the ALJ has failed to account for CPP limitations in the RFC and hypothetical is present in almost all cases involving mental impairments. In almost all cases in which the mental impairment is found to be severe but not so severe as to meet or medically equal a listing, the claimant will be found to have moderate difficulties with CPP. In almost all such cases, the state agency consultants who complete the MRFC forms will also mark some of the 20 itemized functions listed in the form as "moderately limited." If ALJs continue to follow Agency rules that say that limitations identified in the "paragraph B" criteria at steps two and three of the evaluation process and the specific function limitations noted in Section I of the MRFC form do not constitute RFC assessments, cases brought by claimants with mental impairments will continue to be reversed at a high rate. Absent changes or clarification in the law, this will only result in increasing delays and costs of adjudication.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of March, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge